IN the MATTER OF JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST the Honorable Lee S. DREYFUS, Jr., Circuit Court Judge, Waukesha County, Wisconsin.

Supreme Court

*No. 93–1660–J. Submitted on briefs February 3, 1994.—Decided April 6, 1994.*

(Also reported in 513 N.W.2d 604.)

For the Honorable Lee S. Dreyfus, Jr. there was a brief by *Richard Congdon* and *Congdon, Ward, & Walden, S.C.,* Waukesha.

For The Wisconsin Judicial Commission there was a brief by *James C. Alexander,* executive director, Madison and *Thomas J. Basting, Sr.* and *Brennan, Steil, Basting & MacDougall, S.C.,* Janesville.

PER CURIAM.　*Judicial disciplinary proceeding; judge suspended from office.*

This is a review, pursuant to sec. 757.91, Stats., of the findings of fact, conclusions of law and disciplinary recommendation of the judicial conduct panel that heard the complaint of the Judicial Commission alleging that Judge Lee S. Dreyfus, Jr. engaged in judicial misconduct. The panel concluded that Judge Dreyfus engaged in misconduct by failing to decide two cases for more than one year, by filing certificates of pending case status for six months falsely reporting that there were no cases pending beyond the prescribed period and by misrepresenting to the deputy chief judge of the judicial administrative district that he had dictated decisions in two cases six months previously but a clerk had failed to type them and by subsequently making the same misrepresentation to a Judicial Commission investigator. The panel recommended that the court suspend Judge Dreyfus from judicial office for 30 days as discipline for that misconduct. The panel consisted of Court of Appeals Chief Judge William Eich, who served as presiding judge, and Court of Appeals Judges Neal Nettesheim and Daniel Anderson.

The court adopts the panel's findings and conclusions, which are based on a stipulation by which Judge Dreyfus admitted all of the allegations of the Judicial Commission's complaint. That misconduct consists of Judge Dreyfus' "aggravated and/or persistent" failure to promptly decide two cases for more than fifteen

months, a violation of the standard of the Code of Judicial Ethics, SCR 60.01(4), requiring a judge to be prompt in the performance of judicial duties,[1] and his preparation, signing and submission of false and misleading certificates of the status of pending cases and his willful misleading of the deputy chief judge and the Judicial Commission investigator, violations of SCR 60.13.[2] We determine that the nature of that misconduct, taking into account the mitigating factors present, warrants a 15-day suspension from judicial office.

The facts the panel found and to which the parties had stipulated are the following. From the time he took office in August, 1990, Judge Dreyfus had his court reporter prepare the monthly pending case status certificates required by SCR 70.36,[3] which he would sign

---

[1] SCR 60.01 provides:

**Standards.**
The following standards set forth the significant qualities of the ideal judge:

. . .

(4)  A judge should be prompt in the performance of his or her duties, recognizing that the time of litigants, jurors, witnesses and attorneys is of value. A judge should organize his or her court and supervise the personnel under his or her charge so that the business of the court is dispatched with promptness and convenience.

SCR 60.17 provides,

An aggravated or persistent failure to comply with the standards of SCR 60.01 is a rule violation.

A wilful violation of a rule of the Code of Judicial Ethics constitutes "misconduct" under sec. 757.81(4), Stats.

[2] SCR 60.13 provides:

**Misconduct.** A judge shall not indulge in gross personal misconduct.

[3] SCR 70.36 provides:

**Judges' certification of status of pending cases.**

123

and return to the reporter for mailing to the court

(1)(a)   Every judge of a circuit court shall decide each matter submitted for decision within 90 days of the date on which the matter is submitted to the judge in final form, exclusive of the time the judge has been actually disabled by sickness. If a judge is unable to do so, within 5 days of the expiration of the 90-day period the judge shall so certify in the record of the matter and notify in writing the chief judge of the judicial administrative district in which the matter is pending, and the period is thereupon extended for one additional period of 90 days. This subsection applies to an assigned reserve judge.

(b)   In the exercise of its superintending and administrative authority over all courts and upon written request from a chief judge, the supreme court may extend the period specified in par. (a) for decision in specific matters as exigent circumstances may require.

(2)(a)   Within the first 10 days of each month every judge of a circuit court shall execute and file with the office of the director of state courts:

1.   A certificate stating that there are no matters awaiting decision beyond the 90-day or, if extended by certification and notification, the 180-day period specified in sub. (1)(a), but if the 90-day period has been extended by certification and notification, a copy of the certification and notification shall be attached to the certificate; or

2.   If there are matters so pending, a certificate setting forth the name and docket number of each matter, the court in which it is pending, and the date on which it was submitted to the judge in final form.

(b)   The office of the director of state courts shall send a copy of certificates listing pending matters to the chief judge of the judicial administrative district in which those matters are pending and shall notify the chief judge of a judicial administrative district of the failure of a judge within the district to file an affidavit pursuant to this subsection.

(3)   The director of state courts, pursuant to SCR 70.10, and the chief judge, pursuant to SCR 70.19(3)(a), shall assign judges as needed or take other steps for the timely disposition of judicial business to assist a judge who has filed a certificate under sub. (2)(a)2 or 3.

(4)   Failure of a judge to comply with the requirements of sub. (1)(a) or sub. (2)(a) may result in one or more of the following remedial measures:

124

administrator's office. In December, 1991 and January, 1992, the reporter prepared and Judge Dreyfus signed certificates setting forth two cases that had been pending in final form beyond the applicable time period—one since late April and the other since early May, 1991. The state court administrator informed the district court administrator of the status of the two cases listed on Judge Dreyfus' certificates and when the administrator spoke to Judge Dreyfus in January, 1992, offering reserve judge assistance so that the decisions could be completed, Judge Dreyfus told him he would have the decisions completed within the following week.

After his meeting with the court administrator, Judge Dreyfus did not sign the accurate pending case status certificates his court reporter gave him in February, March, April, May, June and July. Instead, he prepared, signed and mailed a substituted certificate for each of those months stating falsely that he had no matters submitted in final form that were awaiting decision beyond 90 days. As Judge Dreyfus had not written the decisions in the two pending cases that were submitted in final form in April and May of 1991, those certificates were false and misleading.

On July 24, 1992, Judge Mark Gempeler, the deputy chief judge of the judicial administrative district, told Judge Dreyfus he was concerned that the two cases about which Judge Dreyfus had been contacted in January, 1992 still had not been decided. Judge Dreyfus told Judge Gempeler there had been an oversight

(a) Change of the judge's assignment, pursuant to SCR 70.19 (3)(a).

(b) Referral of the matter by the director of state courts to the supreme court for the initiation of contempt proceedings.

(c) Referral of the matter by the director of state courts to the judicial commission for investigation of possible misconduct.

and that he had dictated decisions in both cases in January and had given the dictation tapes to a clerk, who failed to type them but was then working on them. In fact, Judge Dreyfus had not given any dictation tape to a clerk and did not do so until after he had spoken with Judge Gempeler; consequently, his statements to Judge Gempeler were false and misleading. Judge Dreyfus dictated the decisions and they were issued in late July or early August, 1992.

After this matter was referred to the Judicial Commission, Judge Dreyfus told the investigator for the Commission on December 1, 1992 that he had dictated the decisions in the two pending cases at the end of January, 1992 but did not know what had become of the dictation tapes until they were discovered in his office in July. He also told the investigator that he started typing his own pending case status certificates in February, 1992 because he had dictated the decisions in those two cases and considered the matters concluded for purposes of the certification rule. Approximately one week after that interview, Judge Dreyfus asked the investigator to meet with him and at that meeting admitted he had not dictated the decisions in January, 1992 but did so in July.

In discussing the discipline to recommend for imposition for Judge Dreyfus' misconduct, the panel took into account that Judge Dreyfus, at his own initiative, asked the Judicial Commission investigator to return in order to recant the misrepresentations he had made and thereafter fully cooperated with the Commission's investigation. Further, the panel considered that Judge Dreyfus had shown remorse for his conduct in this matter. The panel also acknowledged that, since taking the bench, Judge Dreyfus had disposed of more than 7,000 cases timely but noted that at

the time relevant to this proceeding, the cases Judge Dreyfus failed to decide timely were two of only three cases requiring a written decision.

The panel compared Judge Dreyfus' misconduct to that considered in *Matter of Complaint Against Grady,* 118 Wis. 2d 762, 348 N.W.2d 559 (1984). There, over a four-year period, the judge decided 21 cases beyond the time period specified in a statute and filed affidavit forms required by that statute claiming entitlement to salary and stating that there were no cases pending in his court beyond the statutory time period. The court rejected the Judicial Commission's allegation that he had persistently failed to perform official duties established by statute to decide cases within specified time limits and to file accurate affidavits of pending case status because the statute was unconstitutional. The court concluded, however, that Judge Grady persistently failed to promptly decide cases, thereby violating a standard of judicial conduct, SCR 60.01(4), requiring judges to be prompt in the performance of judicial duties. For that misconduct the court reprimanded Judge Grady.

During the course of the *Grady* proceeding, the Judicial Commission withdrew all allegations of gross personal misconduct and willful violation of the Code of Judicial Ethics rules. *Grady, supra,* 767. Thus, the misconduct[4] before the court was limited to Judge Grady's

---

[4] Judicial "misconduct" is defined by statute to include:

    (a)   Wilful violation of a rule of the code of judicial ethics.

    (b)   Wilful or persistent failure to perform official duties.

    (c)   Habitual intemperance, due to consumption of intoxicating beverages or use of dangerous drugs, which interferes with the proper performance of judicial duties.

    (d)   Conviction of a felony.

Section 757.81(4), Stats.

delay in deciding cases. Accordingly, the court determined that Judge Grady violated no other provision of the Code of Judicial Ethics and imposed no discipline for any of his other conduct. Nonetheless, the court took the opportunity to address Judge Grady's filing affidavit forms under the statute knowing they misrepresented the status of his pending cases and reproved him for it, concluding it was prejudicial to the administration of justice and brought the judicial office into disrepute. *Id.,* 785.

We agree with the panel that Judge Dreyfus' misconduct is more egregious than the misconduct considered in *Grady* in that, in addition to his delay in deciding cases, Judge Dreyfus filed false pending case status certificates required by the court's rule and affirmatively misled the deputy chief judge and the Judicial Commission investigator in an attempt to conceal his failure to promptly decide cases and his submission of false certifications.

The prompt disposition of cases brought to the courts is important to the parties to those cases and to the integrity of the state's judicial system upon which Wisconsin citizens rely. When the court in *Grady* held unconstitutional the statutory provision enacted by the legislature setting time limits for judicial decision-making, it did so for the reason that the setting and enforcement of time periods for judges to decide cases lie within the exclusive authority of the judicial branch. As part of its decision in *Grady,* the court adopted a rule of judicial administration, SCR 70.36, establishing time limits for judicial decisions and requiring monthly certification of pending case status in order to promote prompt judicial decisions and to alert the court administrator's office that assistance is needed to help an overburdened judge.

In addition to establishing time limits for judicial decisions, the case status certification rule sets forth a procedure for assisting a beleaguered judge by assignment of judges by the state court administrator, SCR 70.36(3), and provides that the time limits may be extended by this court, SCR 70.36(1)(b). Here, Judge Dreyfus evaded the very mechanisms designed to assist him.

The Wisconsin Constitution, Art. VII, sec. 11, provides that judges shall be subject to reprimand, censure, suspension or removal for cause or for disability in disciplinary proceedings. Discipline should be responsive to the gravity of the misconduct. *In the Matter of Judicial Disciplinary Proceedings Against Aulik,* 146 Wis. 2d 57, 77, 429 N.W.2d 759, 768 (1988). The discipline imposed should be determined by the extent that the public needs protection from unacceptable judicial behavior, based upon the seriousness of the judge's misconduct and the likelihood that it would recur. *In the Matter of Judicial Disciplinary Proceedings Against Gorenstein,* 147 Wis. 2d 861, 873, 434 N.W.2d 603, 608 (1989).

In *Grady,* the panel acknowledged mitigating factors. There are mitigating factors present here as well. Judge Dreyfus was the juvenile judge in Waukesha County Juvenile Court, which according to the records in the State Administrator of Courts office is one of the busiest in the state in terms of sheer volume. Since taking the bench in August of 1990 to the date of the conduct in question, Judge Dreyfus disposed of more than 7,000 cases in a timely manner. We also recognize that at the time, Judge Dreyfus was a relatively new judge. He had been on the bench for approximately one and a half years. We also take into account that within one week after his initial false statements to the Judi-

cial Commission investigator, Judge Dreyfus himself called the investigator and admitted to the falsity of his prior statements. Subsequently, Judge Dreyfus cooperated completely with the Judicial Commission and has on a number of occasions apologized and expressed remorse for his conduct.

The discipline available to us ranges from reprimand to removal. Judge Dreyfus' conduct does not merit removal from judicial office. There is nothing in this record to indicate that Judge Dreyfus is anything but a hardworking, fair and competent judge. The Judicial Commission attorney acknowledged that when he stated before the panel that his investigation in this matter revealed that Judge Dreyfus "stands in high esteem in this community and in this courthouse." We also agree with the Commission that this is conduct which is not likely to recur. Nevertheless, this type of conduct can potentially have serious impact on the public trust and confidence in the judicial system. Accordingly, the court determines that a 15-day suspension from judicial office without compensation is the appropriate discipline in this matter.

IT IS ORDERED that Lee S. Dreyfus, Jr. is suspended from the office of circuit judge without compensation and prohibited from exercising any of the powers or duties of a circuit judge in Wisconsin for a period of 15 days, commencing April 11, 1994.